### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
v. )
)            Case No. 1:24CR263-RDA
)
ABDUL KABBA. )
)

## ABDUL KABBA'S POSITION ON SENTENCING

Abdul Kabba, through counsel, hereby respectfully submits his Sentencing Memorandum. We respectfully submit that a sentence of 12 months and one day will comport with 18 U.S.C. § 3553's requirement of a "sufficient, but no greater than necessary" sentence.

### INTRODUCTION

Adbul Kabba comes before the Court to be sentenced. Abdul[1] recognizes that he is responsible for his criminal conduct, which is completely at odds with his personal values. He writes to the Court that "I was once a victim of the same crime that I committed. I make no excuses because what I did was wrong, and I recognize that I have to face the consequences." Exhibit 1–Letter to Court from Abdul Kabba. Abdul also recognizes that he, and he alone, must take steps to address the underlying causes of his poor decisions:



> While I cannot erase my past actions, I know that I can make better decisions in the future. In order to make good decisions ██████████████████████████████ ████████████████████████ I recognize that I will need help to do that, and it will be a long process. I am motivated to do this, because I have seen how bad things can get and ████████████████████████ Going back is not a choice.

*Id.*

---

[1]    Throughout the memorandum, we refer to the defendant and his brother by their first names, to avoid confusion given that they share the same last name.

As reflected above, Abdul understands that this Court must impose a just sentence. In imposing a sentence that is sufficient, but not greater than necessary, retribution is only one of many factors that must be considered. The Court must also consider the fact that Abdul ███████ ███████████████████████████████████████ in the years leading up to and including his offense. ███████████████████████████████████████████████████████ ███████████████████████████████ As we will discuss in detail, these factors are directly relevant to Abdul's offense.

The sentence in this case should provide a path forward for Abdul by allowing him to get the help he needs, in the most effective way. We respectfully ask this Court to sentence Mr. Eldabbagh to a term of one year and one day.

## FACTUAL BACKGROUND

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (internal citation omitted). Accordingly, it is appropriate to begin by considering Abdul's personal background, and how it relates to the offense of conviction.

### A.  Mr. Kabba's history of emotional and physical abuse by his father.

Mr. Kabba is 29 years old. He has two siblings–an older brother (Omarr Kabba) and a younger sister (Nadia Karber).  Presentence Report ("PSR") ¶49.  Mr. Kabba maintains a close relationship with his mother, brother and sister.  However, growing up, the family's home life was marred by his father's emotional and physical abuse. *Id.*

2

Mr. Kabba's mother, Saddah Raddar, married Mr. Kabba's father when she was only 20 years old.  At the time, he was 28 years old.  During the course of the marriage, it became apparent that Mr. Kabba's father ███████████████, which manifested in extreme jealousy towards his wife.  He was abusive to her, both physically and emotionally.  Omarr Kabba writes that "our father's unpredictable outbursts and verbal attacks on my mother created an unstable home environment. He was often jealous, controlling, and prone to rage over small matters." Exhibit 2–Letter to Court from Omarr Kabba at 1.  He recalls how,"[o]n one occasion, we woke up to our father physically choking our mother during an argument in the middle of the night." *Id.*

Abdul, much more so than either of his siblings, was the target of his father's abuse.  Ms. Raddar writes that "[s]ince he was born, Abdul's father singled him out for physical and emotional abuse."  Exhibit 3–Letter to Court from Saddah Raddar at 1.  Nadia Karber writes of how "[i]t became a running joke among cousins and friends that no matter who was at fault, Abdul would always be the one to be punished." Exhibit 4–letter to Court from Nadia Karber at 1. Similarly, Omarr Kabba recounts that "[w]hile my siblings and I also faced discipline, Abdul bore the brunt of our father's anger."  Ex. 2 at 1.

From the accounts of Mr. Kabba's family members, it is clear that the physical punishment inflicted on Mr. Kabba was extreme.  Omarr Kabba writes:

> My father's way of dealing with these issues was to severely punish Abdul. I vividly recall instances where Abdul was beaten, sometimes in the middle of the night. In one particular incident, our father tied Abdul to a bed with duct tape to prevent him from moving while he was beaten. Abdul was around 10 or 11 years old, and he still has the scars from that night.

*Id.* at 1.  See also Ex. 4 at 1 (describing this incident).

Mr. Kabba's family members also recount other instances of extreme physical abuse, including their father's practice of locking Mr. Kabba out of the house at night, in the cold, as a means of punishment. Ex. 2 at 1 ("There were also times when Abdul ran away from home to avoid punishment, only to be locked out in the cold with no one allowed to let him back inside. He had to sleep in my mother's car."); See also Ex. 3 at 1 (describing instances). Abdul's stepfather, Alex Williams, sometimes witnessed these instances when he was called to help. He writes that "[a]s a child, [Abdul] faced unjust punishments that no young person should have to endure, including harsh discipline and frequent emotional turmoil." Exhibit 5–Letter to Court from Alex Williams at 1.

**B. Mr. Kabba's history of undiagnosed psychological disorders**.

During his school years, Mr. Kabba struggled academically, and was reported to have "behavioral problems" by his teachers. Omarr writes that "[g]rowing up, Abdul's ▮▮▮ made it difficult for him to focus and regulate his impulses. His ▮▮▮ often led to disciplinary actions at school, and because he didn't have the tools or understanding to manage his behavior, he was frequently labeled as a troublemaker." Ex. 2 at 1. It was not until much later, when Abdul was in high school, that he would be diagnosed with ▮▮▮.

It is now apparent that the behavioral problems and academic struggles for which Mr. Kabba's father punished him so severely were a product of ▮▮▮ Sadly but predictably, the physical and emotional abuse had a profound impact on Abdul starting in his childhood. "Abdul's low self-esteem was evident from a young age. He frequently felt like nothing he did was good enough, and he constantly sought validation. Even minor criticism could trigger an intense emotional response, a reaction I believe was rooted in the fear and rejection he experienced from my father." *Id.*

The abuse inflicted by Abdul's father sapped his motivation, even in areas where he showed talent and promise. For instance, Omarr Kabba describes how

> Abdul showed remarkable talent and determination in certain areas of his life. He excelled in soccer and even earned an opportunity to practice with the DC United Juniors team. Unfortunately, his ██████████ sometimes made it difficult for him to follow instructions on the field. Our father, who also served as his coach, would often punish Abdul by removing him from the team, which ultimately caused him to lose his passion for the sport. This was sad, as Abdul's talent and love for the game were undeniable.

*Id;* Ex. 4 at 2 ("As Abdul's soccer coach, he belittled him and made him feel small and fragile compared to his peers."); Ex. 3 at 1-2 ("While Abdul was the better soccer player, his father's constant abuse destroyed his desire to play. He lost interest in everything."). As a result of the abuse and humiliation inflicted by his father, Mr. Kabba withdrew from the sport he loved and excelled at.

Abdul's mother explains in her letter how one fixation of Abdul's low self-esteem was his small size–a direct result of his father's emotional abuse. "Abdul suffered from low self-esteem, and in middle school became fixated on his physical stature. Abdul's father constantly reminded him that he was smaller than his older brother. Abdul became obsessed with the idea that he was physically small and was not growing normally, and began insisting that he should take growth hormone." *Id.* at 2. Later in Abdul's life, this fixation with his small stature and his obsession with proving his self-worth to his father and others led to Abdul's obsession with bodybuilding. Letter of Ex. 5 at 2 ("I firmly believe that these struggles stem from his attempts to manage the unresolved trauma of his past."). ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████
████████████████████████

███████████████████████████ Thus, even the fact that Abdul excelled in bodybuilding as an adult is inextricably intertwined with deep-seated self-esteem issues that resulted from his father's treatment of him.

As discussed in more detail below, it is now apparent that ████████████ ████ ███████████████████████████ ███████████████████████████ ██████████████████████████████████████ ██ .

C.   ████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████







███████████████████████████████████████████████████

██████████████████████████████

### D.  Mr. Kabba's offense.

During the period ████████████████████ Abdul began to engage in risky behaviors, including seeking out escorts online.  This was a result of the fact that he was lonely, depressed, and continuing to struggle with his life-long self-esteem issues.  █████████████ ████████████████████████████████ Abdul occasionally sought out escorts online.  In 2020, when attempting to arrange to meet an escort, and was extorted by an individual who posed as an escort and then demanded money so that he would not expose Abdul. At this time, Abdul was devoting the majority of his time to bodybuilding, and was struggling to survive financially.  Having himself been extorted, Abdul made the inexcusable decision to extort other men who were themselves seeking out prostitutes.  The Statement of Facts accurately describes Abdul's offense, and Abdul fully accepts responsibility for his actions.

This is a serious offense, to be sure.  It is significant, however, that Abdul has duly accepted responsibility for his crime, and has acknowledged the harm that it has caused to the individual victims.  Further, Abdul's history of abuse, ████████████████████ were all interrelated, and are directly related to his offense because these factors severely compromised his judgment.  ████████████████████████████████████

█████████████████████  ██████████████████████████████

████████████████████████████████████████████

████████████████  ████████████████████████████████

████████████████████████████████████████████

████████████████  ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

### E. Mr. Kabba's post-offense rehabilitation.

Abdul's family members agree that the charges in this case have caused him to make serious changes in his life, for the better. Ex. 2 at 2 ("Abdul has shown noticeable improvement. He is calmer, more rational, and far more communicative. This legal situation has served as a profound wake-up call for him."). I wholeheartedly believe that Abdul has learned from this experience and understands that he must continue to turn his life around.").

███████████████████████████████████████████████████████

███████████████████████████████████████    ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████

As discussed in the letters submitted to the Court, Abdul has also restored his close relationships with those he loves. Nadia writes that Abdul "is now more like the brother I loved as a child ████████████████████████████ Ex. 4 at 3. *See also* Ex. 2 at 2 ("Abdul has shown noticeable improvement. He is calmer, more rational, and far more communicative . . . . My brother and I talk a lot more now."); Ex. 3 at 4 ("He has returned to being a loving and caring son who communicates regularly. He has been trying to comfort me and put my mind at ease regarding the serious consequences he faces."). Additionally, Abdul has been fortunate to be "in a loving relationship with a woman who has been very supportive through this process. She is committed to seeing him do better." *Id. See also* Ex. 2 at 2-3 ("Abdul has also developed a supportive relationship with his girlfriend, who has had a positive influence on him. She brings

out his best qualities, encouraging him to stay focused and grounded. Abdul genuinely values her

support, and their relationship has contributed to his continued progress.").



All of these facts relating to Abdul's personal history and circumstances call for a

lenient sentence–one which takes into account the role of Abdul's ███████████████

██████ in his offense conduct, and which recognizes his sincere acceptance of responsibility

and commitment to rehabilitating himself.

### LEGAL STANDARD

Federal sentencing is governed by 18 U.S.C. § 3553(a). Section 3553(a) requires the

sentencing Court to consider a multitude of factors in determining the appropriate sentence,

including but not limited to the defendant's background and characteristics, the need for

deterrence, and the need for rehabilitation. In considering these factors, section 3553(a) directs

the sentencing court to "impose a sentence *sufficient but not greater than necessary*" to comply

with the purposes of sentencing as set forth in the Sentencing Reform Act (emphasis added).

It is well settled that the federal sentencing guidelines are purely advisory, and that a

district court may not presume a sentence within the guidelines to be reasonable. *Gall v. United

States*, 552 U.S. 38, 50 (2007). The court must calculate the applicable Guidelines but may not

rely on that range alone to determine the sentence. *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007) (citing *Gall*, 128 S. Ct. at 596-97). Instead, all Section 3553(a) factors must be considered by the Court.

The applicable law for individual sentencing factors will be discussed in greater detail below.

## THE SENTENCING GUIDELINES

### A. The advisory sentencing guidelines calculation.

The PSR correctly calculates Abdul's advisory sentencing range in this case. The base offense level is 9, under USSG § 2B3.3(a). PSR ¶25. That level is increased by 14 points based on the loss amount under USSG § 2B1.1(b)(1)(H). PSR par. 26. Three points are deducted pursuant to USSG § 3E1.1(a) and (b) given that Abdul accepted responsibility for his offense. PSR ¶¶ 32-33. Another two points are deducted because Abdul is a zero-point offender, under USSG §§ 4C1.1(a) and (b). PSR par. 31. The resulting offense level is 18. PSR Par. 34. The advisory guidelines range is 27-33 months, prior to any reduction under USSG. § 5K1.1. PSR par. 34.

██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████

## THE SECTION 3553(a) FACTORS

### A. Mr. Kabba's personal history and characteristics support a sentence below the guidelines.

████████████████████████████████████████

███████████████████████ Nevertheless, they provide deep insight into Abdul's culpability

because they significantly impacted his thought process and self-control, making him impulsive and prone to risky behaviors.  Based on the letters submitted to the Court, it is no exaggeration to say that Abdul was simply not himself when he engaged in the criminal conduct in this case. Indeed, the observations of Abdul's family members show that, ███████████████ ███████████████ Abdul was engaging in bizarre conduct, reflective of the fact that he had lost touch with reality. It is important to take these conditions into account in determining the appropriate sentence. *See Boyde v. California*, 494 U.S. 370, 400 (1990) ("[D]efendants who commit criminal acts that are attributable to a disadvantaged background, ███████████ ███████████, may be less culpable than defendants who have no such excuse." (internal quotations, citations, and emphasis omitted)). Across the country, courts have found that it is important to consider whether a defendant's criminal conduct and criminal history "stem[] from ███████████████████████." *United States v. Ray*, 375 F. Supp. 2d 832, 834 (S.D. Iowa 2005). Of course, courts also recognize that "[t]hese are not excuses for criminal behavior [but are] factors the Court must consider in arriving at a sentence that is sufficient, but not greater than necessary to serve the needs of the sentence imposed." *Id.; see also, e.g., United States v. Flowers*, 946 F. Supp. 2d 1295, 1299 (M.D. Ala. 2013) (imposing downward variance based on ███████████████████ ██████████████"); *United States v. Wyatt*, 442 F. Supp. 2d 298, 301 (W.D. Va. 2006) ("The defendant's ███████████ . . . explains (although it does not excuse) her terrible choices evident in this case. While her conduct certainly makes her guilty as charged, her relative lack of culpability, along with her youth and family support, make a significant difference in the defendant's case, in light of the factors set forth in § 3553(a).").

14

████████████████████████████████████████████████████

████████████████████████████    ████████████████████████

████████████████████████████████████████████████████

██████████████████████████    ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Abdul had no criminal

record and no contact with the criminal justice system whatsoever. ████████████████

████████████████████████████████████████████████████

████████████████████████████    ████████████████████

████████████████████████████████████████████████████

███████████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

───────────────

[2]    USSC, *Results of Survey of United States District Judges January 2010 through March 2010*, tbl. 13 (2010), *available at* http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf.

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

***Significant history of physical and emotional abuse***.  ████████████████████████

████████████████████████████████████████████  In addition to these

factors, there is also Abdul history of significant physical and emotional abuse by his father.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████  In other words, the shocking and

persistent abuse that Abdul endured growing up contributed to his later struggles  ████████

████████████████████████  led to the dysfunction that he was dealing with at the

time he committed the offense.  The letters submitted by those who have known Abdul his whole

life leave no doubt that his decisions, even seemingly

positive ones like his involvement in bodybuilding, are directly connected the abuse inflicted on him by his father.

Numerous courts have recognized that a significant history of childhood abuse supports leniency at sentencing. *See, e.g.*, *Eddings v. Oklahoma,* 455 U.S. 104, 115 (1982) ("[T]here can be no doubt that evidence of a turbulent family history, of beatings by a harsh father, and of severe emotional disturbance is particularly relevant."); *United States v. Lopez*, 938 F.2d 1293, 1298 (D.C. Cir. 1991) (holding that court must consider the impact of defendant's background, including his violent upbringing); *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens."); *United States v. McBride*, 511 F.3d 1293, 1295- 98 (11th Cir. 2007) (per curiam) (affirming a downward variance from 151-188 month range to 84 months in prison in a child pornography, based on the defendant's history of abuse and abandonment).

*Lack of any prior criminal history*.  As reflected in the PSR, Abdul has no criminal history.  This further demonstrates that Abdul's ███████████ was a significant factor in his offense.  It also means that, given that Abdul ████████ █████████ ██████████ ███████████████████████████████ the chances of recidivism are exceedingly low.  This factor is somewhat accounted for in the PSR's calculation of the guidelines, which applies a 2-point reduction because Abdul is a zero-point offender. It is, nevertheless, also significant under section 3553(a) because it is a reflection on Abdul's character, the need for just punishment, and the need for deterrence.

*Family and community support*. Abdul has significant family and community support. This is an important consideration at sentencing, not just because it reflects the defendant's

character, but also because courts have recognized that individuals with family and community support are more likely to successfully reenter society and to refrain from further criminal conduct. *See, e.g., Gall,* 552 U.S. at 43 (describing support from Gall's family and community as one factor favoring significantly reduced sentence); *United States v. Autery,* 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin,* 520 F.3d 87, 92 (1st Cir. 2008) (family support one of three valid reasons for 91-month downward variance); *United States v. Parker,* 2011 WL 6013073, at *2-3 (D.N.M. Nov. 23, 2011) (citing that Parker has a "supportive family structure" in granting a 1-level downward variance); *United States v. Cernik,* 07-20215, 2008 WL 2940854, at *6, 10 (E.D. Mich. July 25, 2008) (noting that "defendant has a solid support structure in his family" in imposing a non-guidelines probation sentence from 46-57 months). This is an additional factor that supports a below-guidelines sentence.

  ***Genuine remorse and acceptance of responsibility****.* Abdul has demonstrated that he has genuinely accepted responsibility for this offense, ███████████████████ ████████████████████████████████████████ ████████████████████████ And the letters submitted to the Court show that Abdul's acceptance of responsibility is genuine, based on his attitude and the changes he has made in his life.

  Under the sentencing guidelines, defendants are typically awarded a 3-point reduction for pleading guilty prior to trial. *See* USSG §§ 3E1.1(a) and (b). Unfortunately, a fixed reduction fails to account for important differences in the nature and degree of defendants' acceptance of responsibility. Thus, for example, As one court has observed,

> [U]nder the advisory guideline regime created by *United States v. Booker*, courts have greater flexibility to fashion sentences that fit the circumstances of the case. Where

appropriate, courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1. This is so because such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2). Further, courts should encourage offenders to mitigate their misconduct voluntarily, whether by admitting it, paying restitution or making efforts to address substance abuse, mental health or other problems that contributed to it.

*United States v. Milne*, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005) (internal pin citation to *Booker* omitted).

A sentence below the sentencing guidelines is necessary, in part, to account for the extent to which Abdul has accepted responsibility for his crime.

**B. A sentence of greater than one year and one day is not necessary to achieve general or specific deterrence.**

A sentence within the advisory guidelines range is not necessary to achieve deterrence, and would therefore be excessive under section 3553(a). Courts have recognized that public prosecution and conviction, in itself, is a substantial punishment and deterrent. *See, e.g., United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment of the defendant")*; United States. v. Smith,* 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) ("Sometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."); *United States v. Wulff,* 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation."). Indeed, a Google search of Abdul's name returns a press release by the US Attorney's discussing the charges against him and his guilty plea. This information will follow Abdul for the rest of his life. It is a fact of modern life that people turn to the internet to "look up" who they are dealing with, both socially and professionally. Wherever he goes for the

rest of his life, Abdul will be viewed with suspicion and caution, regardless of the amount of time he ultimately serves in prison.

In terms of specific deterrence, this fact is intertwined with the need to ensure that the "needed . . . correctional treatment" is provided "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). More than anything, Abdul would benefit ███████████████████████ ████████████████ █████████████████████████████████████████ ████████████████████████████████████████ This factor, more than any other, will ensure that Abdul never reoffends. Furthermore, Abdul's lack of criminal history reflects that his chances of reoffending, if any, are exceedingly low.

## CONCLUSION

For all of the foregoing reasons, a sentence of 12 months and one day is sufficient, but no greater than necessary to meet all of the goals of sentencing in this case. Mr. Kabba respectfully requests that the Court recommend ███████████████████████████████████ during Mr. Kabba's period of incarceration.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.
VA Bar No. 979785
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a copy of the foregoing document via ECF which automatically sends a copy to all counsel of record.  I also certify I provided an unredacted copy to the government by email.

Respectfully submitted,

By:/s/ Eugene Gorokhov
Eugene Gorokhov, Esq.